IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

BRUCE ANTHONY TURNER
PETITIONER, PRO SE

v.                                   CASE NO. 2:05CV1169-F

BOB RILEY, GOVERNOR OF
ALABAMA; DONAL CAMPBELL,
COMMISSIONER FOR ALABAMA
DEPT. OF CORRECTIONS;
JERRY FARRELL, WARDEN
FOUNTAIN CORRECTIONAL CENTER
JIM COOKE, TCCF CORRECTIONS
CORP OF AMERICA; ET. AL.
RESPONDENTS

### PETITION FOR WRIT OF HABEAS CORPUS

Comes now petitioner Bruce Anthony Turner, Pro Se in the above styled cause and pursuant to **U.S.C. Title 28 §2241** and petitions this Honorable Court for an order issuing this Writ of Habeas Corpus and petitioner shows the following in support thereof;

### FACTS

In 2003 Alabama Commissioner Donal Campbell and Jerry Farrell, Warden of Fountain Correctional Center, Atmore, Alabama (hereinafter FCC) transferred me to the Tallahatchie Correctional Facility, (hereinafter TCCF) in Tutwiler, Mississippi pursuant to the Interstate Corrections Compact, Code of Alabama 1975 §14-13-1 (hereinafter ICC) said contract being entered into by the Alabama Department of Corrections, (hereinafter ADOC) and a private enity known as Corrections Corporation of America (hereinafter CCA) for the housing, care, and control of Alabama inmates, capriciously, arbitrarily and without legal authority.

### CODE OF ALABAMA 1975 §14-13-3

"The Commissioner of the ADOC is expressly authorized to enter into contracts with other "States" that have legally joined into the ICC as contained in §14-13-2."

### CODE OF ALABAMA 1975 §14-13-2

"The Interstate Corrections Compact is hereby enacted into law and entered into by the "State" of Alabama with any and all "States" legally joining therein, in accordance with it's terms in the form substantially as follows:"

### ARTICLE I, PURPOSE AND POLICY

"The party "States" desiring by common action to fully utilize and improve their institutional facilities and provide adequate programs for the confinement, treatment, and rehabilitation of various types of offenders declare that it is the policy of the party "States" to provide such facilities and programs."

### DEFINITIONS

1) "States" means a State of the United States, the United States of America, a territory or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico.

2) "Sending State" means a State party to this compact to which conviction or Court committment was had.

3) "Receiving State" means a State party to this compact to which an inmate is sent for confinement other than a State in which conviction or Court committment was had.

4) "Inmate" means a male or female offender who is committed under sentence to a penal or correctional institution.

### CODE OF ALABAMA 1975 §14-13-43

(2)

### **REMOVAL OF CONVICTS, DISEASE OR OTHER URGENT NECESSITY**

"The Board of Corrections may cause the convicts to be removed to such place of security within the "State" as they may deem expedient whenever the prevalence of any epedemic, infectious, or contagious disease or any other "urgent necessity" may render proper, taking all necessary precaution to insure the safe-keeping of the convict and to prevent escape when removed".

Nothing within the language of the ICC authorizes ADOC to enter into a contract with a private enity for the housing, care, and control of Alabama inmates. To be most sure, Article I setforth a State of the United States, the United States of America, a territory or possession of the United States, the District of Columbia and the Commonwealth of Puerto Rico as partys that may legally join into contract with Alabama under the ICC. At no point in the legislative wording can the term "private enity" be found as a legally defined party that may enter into a contract with ADOC, therefore, because a "private enity" such as CCA is not a legally defined party as set-forth in the provisions of the ICC. Alabama could not legally and constitutionally join into a contract with CCA. When enacting the ICC, the Alabama legislature setforth limits upon the ADOC's to transfer it's inmates and in doing so created certain unqualified liberty interest for inmates that have been transferred pursant to the ICC Statute. The Alabama legislature specifically setforth in **§14-13-43**, that when inmates are removed due to "urgent necessity" such removal is to be to place a security within the "State". At the time of the transfer in this case, the ADOC was and still is under a Federal Court Order to releive over-crowding in Alabama institutions.

In a mad rush to beat the deadline for compliance with the Court Order to relieve overcrowding before additional fines were imposed, the ADOC illegally and without authority entered into a contract with CCA for the housing, care, and control of some fourteen-hundred (1400) inmates of Alabama to be housed in Tutwiler, Mississippi. Such a contract is in direct contravention of the strictures of the ICC and because the transfer in this case was motivated by the "urgent necessity" of avoiding additional fines, ADOC once again ursuphed authority over the Alabama Legislature by transferring inmates across the state line, which directly contravenes the terms of §14-13-43. Such a contract that was implemented without authority is unconstitutional and in violation of the Equal Protection Clause of the 14th Amendment. **CODE OF ALABAMA 1975 §14-13-2 (h)**, dictates that when an inmate is confined pursuant to the ICC, that inmate retains any and all rights, benefits, statue, and progrtams in which he could have been participating if confined within the sending State. Because of the transfer in this case, the petitioner has been deprived of rights, benefits, status, and programs in which he was participating in at the time of the transfer, which was without legal authority and once Alabama released me to CCA, Alabama lost jurisdiction over me and CCA cannot legally detain me. **White v. Pearlman 42 F2D, 788.**

"Whether or not a contract is unconstitutional on it's face presents a question of Federal Law that is to be decided by the District Court". **Bowman v. CCA, 188 F. Supp. 2d 870.**

Whenever a transfer adversly affects petitioner's statutorily created eligibility for Work Release, Parole consideration, less restrictive custody, or provides no educational or rehabilitation programs (as in the present case) as provided in 504 of the Rehabilitation Act **29 USC §794**, it violates the Equal Protection Clause. Even though the Constitution itself may not provide a liberty interest for a inmate to remain at a particular institution, the Alabama Legislature has created statutory rights under the ICC, such as requiring that removal of convicts activated by "urgent necessity" (as in the resent case) to be within the boundaries of Alabama. Futhermore, §14-13-2(h) created rights to benefit for inmates confined pursuant to the ICC. "The touchstone of due process is protection of the individual against arbitrary action of the government". **Dent v. West Virginia, 129 US, 114, 9 S.Ct. 231, 233, 32 LED 623.** The transfer of the petitioner in this case has deprived him of due process in an arbitrary action by ADOC transferring petitioner to a facility that does not provide the same benefits, rights, status, and programs as Alabama inmates enjoy at the institution from which he was transferred. **Morrissey v. Brewer, 408 US 471, 482, 92 S.CT. 2593, 2601, 33LED 2d 484.** "We see therefore, that a liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty, and it's termination inflicts a grievous loss on the parolee and often on others. It is hardly useful any longer to try and deal with this problem in terms of whether the parolee's liberty is a right or priviledge, by whatever name the liberty is valuable and must be seen as within the protection of the 14th Amendment". In the present case, as in **Morrissey**, the rights or

priviledges were creatures of the Alabama Legislature when enacting the ICC and certain sections grants unqualified libertys and when they are terminated in an arbitrary manner, it is inflicted a grievous loss upon the petitioner and his family by moving the petitioner to another State. In doing so, ADOC not only went beyond their scope of authority, but deprived the petitioner of rights, benefits, status, and programs in which he would still be participating if not for the transfer. At the time of the transfer, I was participating in Trade School, and the Honor Community program. My prison record is clean. As a member of the Honor Dorm Community, I had various responsibilites; This program provided numerous classes which were aimed at regeneration of one-self in preparation to return to society. These classes taught by "free world" instructors were aimed at moral and christian values, self help, anger managemnet, life skills, problem solving, personal development and numerous other classes that were valuable tools in our preparation for our acceptance into society. This program provided the atmosphere of living in an actual "free world" community by allowing interaction of the staff and the community providing a greater degree of trust to solve our problems within the community. The program provided contact with the "free world" instructors, who because of the greater level of dignity, trust and integrity we had achieved, allowed us to discuss our thoughts and beliefs on a basis much like that of a "free world" community. This program was responsible for allowing the petitioner to reach that higher level of trust and dignity that otherwise would have not have been obtained. This program provided stepping stones of motivation for the regeneration of

ones's mental, spiritaul, emotional and physical self while providing a greater level of trust, dignity and integrity, that I had so earnestly strived to achieve and I have lost the support of the staff and sponsors who supported my efforts. Without this program, I am once again facing a world of seemingly hoplessness where it appears that I am being punished for being a model inmate and for achieving a greater level of trust, dignity and integrity. In essence, I have lost my basic foundation of societal integrity which is the most basic goal of rehabilitation. One of the benefits I have lost is an adequate law library, the access to the law library here is restricted to one visit per week on Friday, to research for 2 hours or less, a library that does not have any Sheppard's no case name citators, no West Key Digest, no descriptive word indexes. To obtain a case you submit a request with the proper cite, if you don't know the exact cite, you don't get the case and have no means available to look for it. We are not provided with soap, toothpaste, shaving cream, or razors and we are packed 3 to a cell, one man on the floor. We are locked in our pod 22½ hours per day without any programs, and no officer in the living area where the tension is great due to idleness. ADOC has abrogated the structures of benefits created by the Alabama Legislature by illegally entering into a contract with CCA, depriving the petitioner of stautory benefits and inflicting cruel and inhumane conditions upon him he otherwise would not have suffered except for the illegal contract and transfer in this case.

(7)

## PRAYER

Wherefore, petitoner prays this Honorable Court to grant declaratory relief, declaring the transfer in this case illegal and to issue a preliminary injunction restraining ADOC from ursuphing jurisdiction over petition and any and all relief necessary.


Respectfully Submitted,


Bruce Anthony Turner


## AFFIDAVIT OF PETITIONER

I, do hereby affirm under penalty of perjury that the above foregoing is true and correct to the best of my knowledge.
Dated this 4th day of Dec., 2005.


_Bruce Turner_
Petitioner


_James E. Walker_
Notary Public

9-2007
My Commission Expires